UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

RALPH BYRD COOPER, JR.,           )
                                  )
            *Plaintiff,*          )
                                  )
v.                                )       No.:   3:12-cv-76-TAV-CCS
                                  )
PAUL WHITE, et al.,               )
                                  )
            *Defendants.*         )

## MEMORANDUM OPINION

This *pro se* prisoner's civil rights action pursuant to 42 U.S.C. § 1983 is before the

Court on defendants' motion for summary judgment [Doc. 72]. Plaintiff has responded

in opposition [Docs. 78, 79], and defendants have replied [Doc. 80]. Plaintiff is in the

custody of the Tennessee Department of Correction, and the remaining defendants are

Anderson County, Tennessee; Anderson County Sheriff Paul White; and Detention

Facility Chief Avery Johnson.

Plaintiff makes the following claims and arguments in his amended complaint and

in response to defendants' motion: that he was not provided with adequate medical

treatment; that he was not provided with access to a handicap-equipped shower; that he

was permitted to shower only one time in seven days; and that his rights under the

Americans with Disabilities Act were violated by the same conduct giving rise to his

federal civil rights claims. Having reviewed the parties' submissions and relevant law,

the Court will grant defendants' motion.

## I.  Background

Plaintiff was most recently booked into the Anderson County Detention Facility ("Detention Facility") on November 12, 2010 [Doc. 74 p. 1]. During the booking process, plaintiff possessed a pair of crutches and informed officers that he was blind in one eye and suffered from diabetes [*Id.*]. According to defendants, plaintiff did not provide any medical reason for why he needed the crutches and did not request any special accommodation [*Id.* at 1–2]. Plaintiff claims he stated that he needed the crutches because he is diabetic and on medication for high blood pressure and high cholesterol [Doc. 78 p. 3]. However, on the form titled "Inmate Booking/Medical Screening Questions," plaintiff answered no to the question, "Do you have a serious medical condition that may require attention while you are here?" and in the box for "List All Medical Conditions," plaintiff only mentioned his diabetes and blindness in one eye [Doc. 72-2 p. 6]. And having reviewed the facility's records, Detention Facility Lieutenant Richard Parker noted that plaintiff had been incarcerated at the facility on thirteen separate occasions and that there is no record of him requesting or being provided with handicapped accommodations during any of his prior periods of incarceration at the facility [Doc. 72-1 ¶¶ 2–4, 7]. Plaintiff admits this [Doc. 78 p. 5].

Housing assignments at the Detention Facility are based upon the nature of the crime(s) committed by the inmate [Doc. 74 p. 2]. Because plaintiff was convicted of aggravated rape, he was housed in the facility's maximum security housing unit, Unit 4,

in Cell 406 [*Id.*]. Only after being escorted to his cell did plaintiff request to be housed in a handicap-equipped cell [Doc. 72-1 ¶ 7]. The facility promptly addressed plaintiff's complaint, even though plaintiff had the opportunity to raise the issue at his intake medical screening. The following day, November 13, 2010, plaintiff was moved to Cell 405, equipped with a shower, and was provided with a metal folding chair to use while showering [Doc. 74 p. 2]. Plaintiff claims these actions demonstrate that defendants were aware that he could not stand in the shower and that there was a problem [Doc. 78 p. 4].

The Detention Facility has no record of any complaints, requests, incidents, or accidents involving plaintiff and his use of the shower between November 13, 2010, and November 19, 2011 [Doc. 74 p. 2]. Plaintiff, however, claims that every day he asked one of the sergeants on duty when he would be moved to a unit with a handicap shower so that he would not "keep almost falling getting in and out" of the in-cell shower [Doc. 78 p. 5]. Then, on November 19, 2011, Detention Facility officers and medical staff responded to an emergency call regarding plaintiff, who claimed that he slipped and fell while attempting to exit the shower [Doc. 74 p. 2]. Plaintiff was immediately transported to the emergency room at a local hospital [*Id.*].

After being treated, plaintiff was cleared to return to the Detention Facility that same day, November 19, 2011 [*Id.*]. Emergency room reports indicate that plaintiff suffered no fractures or dislocations from his fall [*Id.* at 3]. Plaintiff submitted several

medical requests following his return to the Detention Facility, which were addressed by Dr. Townsend or other members of the medical staff [*Id.* at 3–4].[1]

Because plaintiff was housed in a different cell in the maximum security unit upon his return, which did not have a shower, plaintiff's shower time was determined by the established schedule for the communal showers in the unit [*Id.* at 3]. If an inmate refused to take a shower during his allotted time, he forfeited the opportunity to shower that day [*Id.*]. As plaintiff states, the communal showers in the unit did not have any handicap accommodations [Doc. 78 p. 6]. According to defendants, for seven consecutive days following plaintiff's return to the facility, plaintiff voluntarily refused his opportunity to shower and made no written or verbal requests for shower accommodations [Doc. 74 p. 3]. Reports documented plaintiffs' refusals but made no mention of any request for accommodations [*See, e.g.*, Doc. 72-5 p. 1 ("Inmate Ralph Cooper refused his hour

---

[1] The following allegations from the amended complaint are plaintiff's view of the events that followed his return from the emergency room. Upon his return, former defendant Dr. Charles Townsend ordered the crutches to be taken from plaintiff, and plaintiff had to crawl on the cell floor to get around [Doc. 20 p. 9]. Defendant Townsend also ordered his wheelchair taken, to be used only when he was out of his cell [*Id.*]. Defendant Townsend took more than a week to follow up on his injuries, and defendant Townsend refused to give plaintiff the pain medication prescribed by the emergency room doctor [*Id.* at 10]. When plaintiff finally saw defendant Townsend and complained of continuing chronic pain, defendant Townsend did not examine him but simply stated it was because he was obese and needed to lose weight [*Id.* at 10–11]. Defendant Townsend also disregarded the emergency doctor's order that if plaintiff's pain continued he should return to the emergency room [*Id.* at 11]. On December 7, 2011, plaintiff filed a request for pain medication and a request to be seen by a back and spine doctor, both of which were denied by defendant Townsend [*Id.* at 12]. Plaintiff filed another request for pain medication and outside consultation, which was denied by defendant Townsend [*Id.*]. On January 16, 2012, plaintiff filed a medical grievance concerning his pain and the denial of medication, which defendant Townsend answered, stating that all plaintiff wanted was pain pills, which are for acute injuries and not chronic pain [*Id.* at 13].

The Court granted Dr. Charles Townsend's motion to dismiss, reasoning that plaintiff relied only on his own unsubstantiated claims that he suffered injury from a delay in treatment and from the doctor's refusal to give him pain medication [Doc. 55 p. 9].

4

out.")].  According to plaintiff, he did not "refuse" the opportunity [Doc. 78 p. 7].

Plaintiff claims that every night he said he needed to be taken to a different housing unit

to use a handicap shower but those requests were denied [*Id.*].  Then on December 1,

2011, at plaintiff's request, plaintiff was escorted to a different housing unit to access the

handicap-equipped shower located in that unit [Doc. 74 p. 3].

## II.    Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is

proper "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

moving party bears the burden of establishing that no genuine issues of material fact

exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris*

*Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).  All facts and all inferences to be drawn

therefrom must be viewed in the light most favorable to the nonmoving party.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

*Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion

under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of

allegations."  *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423

(E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317).  To establish a genuine issue as to

the existence of a particular element, the nonmoving party must point to evidence in the

record upon which a reasonable finder of fact could find in its favor.  *Anderson v. Liberty*

5

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

"To state a successful claim under 42 U.S.C. § 1983, Plaintiffs 'must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law.'" *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 491–92 (6th Cir. 2006) (quoting *Russo v. City of Cincinnati*, 935 F.2d 1036, 1042 (6th Cir. 1992)). Here, plaintiff's amended complaint makes claims under the Eighth

6

Amendment and the Americans with Disabilities Act.[2]  The Court will address plaintiff's claims in turn.

## A.    Eighth Amendment Medical Needs Claim

The Eighth Amendment's ban against cruel and unusual punishment obliges correctional authorities to provide medical care for prisoners' serious medical needs.  To state a claim under § 1983 in the medical context, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Thus, "[a] constitutional claim for denial of medical care has objective and subjective components."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).

The objective component requires the alleged deprivation to be sufficiently serious.  "'[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.'"  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  "If there is an obvious need for medical treatment, then the court must determine whether the delay in securing that care was reasonable."  *Cain v. Irvin*, 286 F. App'x 920, 927 (6th Cir. 2008).  "If, however, the injury is not apparent or relatively minor, . . . a plaintiff must provide 'medical evidence' demonstrating that the delay in treatment resulted in additional injury."  *Id.*

---

[2] Because plaintiff has been transferred from the Anderson County Detention Facility to the Northeast Correctional Complex, his requests for injunctive and declaratory relief are moot. *See Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (holding that inmate's request for injunctive relief against alleged violation of his religious rights was moot after inmate was transferred from prison).

7

The subjective component requires the inmate to show that a prison official possessed a sufficiently culpable state of mind—that is, deliberate indifference to inmate health or safety. *Brown*, 207 F.3d at 867. "Put simply, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Johnson v. Karnes*, 398 F.3d 868, 875 (6th Cir. 2005) (quoting *Farmer*, 511 U.S. at 836). Negligence is not sufficient. *See Farmer*, 511 U.S. at 835–38 ("With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other . . . .").

It is undisputed that plaintiff was provided with prompt medical treatment after his alleged fall on November 19, 2011. Therefore, plaintiff's medical treatment claim is limited to his perceived delay in care upon his return to the Detention Facility. Plaintiff argues that he experienced pain and lost use of his legs upon returning to the facility from the emergency room. In support, he has submitted a copy of a Detention Facility log book page noting that plaintiff's criminal court appearance on November 21, 2011, two days after the fall, was "reset due to [plaintiff's] being unable to walk" [Doc. 79-1 p. 50]. The log also shows, however, that plaintiff was taken "to see Mobile Imaging" that same day [Doc. 80-1 p. 1]. Plaintiff had complained of joint pain in his leg, and Dr. Townsend referred plaintiff to Mobile Imaging, which found "[n]o radiographic evidence of acute fracture or dislocation" [Doc. 80-2 p. 1].

Plaintiff also relies on his unsubstantiated claims that he suffered from a delay in treatment, the emergency room doctor's instructions to return if the pain becomes severe,

8

and the findings of an MRI performed on plaintiff's spine on July 12, 2012 [Doc. 78 p. 10; Doc. 84 p. 7; Doc. 79-1 p. 49]. Having reviewed the record, the Court concludes that plaintiff has failed to submit sufficient evidence to create a genuine dispute as to the objective component. As defendant points out, plaintiff's medical requests and grievances from the relevant period do not mention any alleged inability to walk and instead focus entirely on plaintiff's desire to obtain pain medication above and beyond what he was already receiving [Doc. 73 p. 4 n.4]; *see also Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013) (stating that verifying medical evidence of an exacerbated injury is necessary to establish the objective prong for non-obvious complaints of a serious need for medical care).

The available evidence does not create a genuine dispute that the Detention Facility delayed, let alone unreasonably delayed, in caring for a condition "so obvious that even a lay person would easily recognize the need for medical treatment." *Burgess*, 735 F.3d at 476; *Cain*, 286 F. App'x at 927. Nor does it create a genuine dispute that plaintiff's condition deteriorated because of any alleged delay. *See Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (holding that "'[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed'" (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994))); *Rumsey v. Martin*, 28 F. App'x 500, 502 (6th Cir. 2002) (holding that plaintiff inmate's claim failed because he did not submit "medical evidence which clearly shows

9

that his condition deteriorated because of a delay in filling his prescriptions"). When plaintiff fell and when he complained of leg pain, he was promptly taken to the emergency room and to Mobile Imaging, respectively. Moreover, the MRI report does not appear to make any findings regarding deterioration due to delay [*See* Doc. 79-1].[3]

Even assuming plaintiff could establish the objective prong—a detrimental effect due to delay, plaintiff has failed to present sufficient evidence that could support a finding that either defendant White or Johnson acted with a sufficiently culpable mental state.[4] Plaintiff has not provided sufficient evidence that either defendant White or Johnson was aware of facts from which he could infer that plaintiff was at substantial risk of serious harm, let alone that either defendant actually drew such an inference. *See Farmer*, 511 U.S. at 837. Although plaintiff contends that he filed several medical requests and a medical grievance relating to his care upon his return from the emergency room, he does not allege that either defendant White or Johnson was aware of those requests. And even accepting plaintiff's allegation that defendant White saw crutches in plaintiff's cell on at least one occasion, the Court finds that such an observation, standing alone, is insufficient to create a genuine dispute as to deliberate indifference. In fact,

---

[3] A medical need can also be "sufficiently serious if it has been diagnosed by a physician that has mandated treatment." *Burgess*, 735 F.3d at 476. The Court, however, does not find that the record in this case, including the emergency room doctor's notes [Doc. 79-1 p. 49], creates a genuine dispute that a physician has mandated treatment.

[4] "[T]he collective acts of defendants cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012). In other words, "damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original).

10

among other indicators, plaintiff's trip to Mobile Imaging on the day he apparently claimed an inability to walk supports that the Detention Facility affirmatively responded to plaintiff's complaints of pain or injury and was not deliberately indifferent to his medical needs.

Accordingly, summary judgment will be granted in favor of defendants with regard to plaintiff's medical care claims.[5]

## B. Eighth Amendment Conditions-of-Confinement Claim

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Like a medical needs claim, a conditions-of-confinement claim contains both objective and subjective components. "The objective component requires the plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him 'the minimal civilized measure of life's necessities,'" *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Rhodes*, 452 U.S. at 347), including "essential food, medical care, or sanitation," *Rhodes*, 452 U.S. at 348. The subjective component requires a plaintiff to demonstrate that the accused officials "possessed a sufficiently culpable state of mind"—that is, at a minimum, deliberate indifference to the prisoner's serious medical needs. *Wilson v.*

---

[5] And to the extent plaintiff's claims pertain to Dr. Townsend's treatment decisions and plaintiff's disagreement with those decisions, the Court finds such allegations insufficient for plaintiff's claims to survive summary judgment. *See Wooler v. Hickman Cnty.*, Civil Action No. 5:05CV-247-R, 2008 WL 5412826, at *22 (W.D. Ky. Dec. 30, 2008) ("Mere disagreement with the nature of one's medical treatment is not sufficient, standing alone, to constitute deliberate indifference to a serious medical need.").

11

*Seiter*, 501 U.S. 294, 297 (1991); *see also Farmer*, 511 U.S. at 837 (stating that prison official cannot be found liable for denying inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety").

Plaintiff's condition-of-confinement claim appears to be based on his allegations that he was denied use of a handicap-accessible shower prior to November 19, 2011, and that he was permitted to shower only once in seven days following his return from the emergency room [Doc. 20-1 ¶¶ 19–26]. Neither of plaintiff's arguments has merit.

### 1.    Cell with a Shower and Chair for Showering

Plaintiff first argues that he was placed in a cell without a handicap-equipped shower, despite arriving at the facility on November 12, 2010, with crutches. In the thirteen separate occasions plaintiff had been incarcerated at the facility, there is no record of him requesting or being provided with handicapped accommodations [Doc. 72-1 ¶¶ 2–4, 7; Doc. 78 p. 5]. But according to plaintiff, during the booking process, he stated he needed the crutches because he is diabetic and on medication for high blood pressure and high cholesterol [Doc. 78 p. 3].

Regardless, only after being escorted to his originally-assigned cell did plaintiff request to be housed in a handicap-equipped cell [Doc. 72-1 ¶ 7]. Although plaintiff was not moved to a handicap cell, he was moved to a cell equipped with a shower and was provided with a metal folding chair to use while showering [*Id.*]. The Detention Facility has no record of any complaint, request, incidents, or accidents involving plaintiff and his

12

use of the shower between November 13, 2010, and November 19, 2011 [*Id.*]. Nor has plaintiff presented any evidence that he was prevented from safely showering during this time, aside from his own claims that he told the guards daily that he was almost falling when using the shower.

Negligence is insufficient to impose § 1983 liability, and courts have rejected prisoners' Eighth Amendment claims in similar slip and fall cases. *See Reynolds v. Powell*, 370 F.3d 1028, 1031–32 (10th Cir. 2004) (dismissing inmate's Eighth Amendment claim, even though inmate was on crutches and had specifically warned prison officials that he was at risk of falling, where plaintiff had safely entered and exited the shower area using his crutches on numerous occasions prior to his fall); *Kirby v. Ky. Corr. Psychiatric Ctr.*, 198 F.3d 246 (6th Cir. 1999) (finding that defendants acted with, at most, mere negligence or lack of due care by failing to provide shower mats or railing to inmate who required the use of a sling for one of his arms and subsequently slipped and fell upon exiting the shower); *Shaw v. TDCJ-CID*, 540 F. Supp. 2d 834, 838–39 (S.D. Tx. 2008) (finding no deliberate indifference, even though legally blind inmate "may have been more vulnerable than most to slipping on the wet shower surfaces," because the inmate's allegations indicated, at most, that prison officials were negligent in failing to ensure that the handicap showers were not slippery, a problem common to all showers); *cf. Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) (finding triable issue of fact when plaintiff wore a leg cast and relied on crutches, prison guards were aware plaintiff had fallen and injured himself several times, prison doctor stated that plaintiff

should be placed in handicap unit, and plaintiff alleged that a variety of options, including a chair in the shower, would have met his safety needs).

More specifically, plaintiff cannot show a genuine dispute on the subjective prong of the analysis—that is, that any Detention Facility official consciously disregarded an excessive risk to plaintiff's health or safety. In fact, the record shows that the Detention Facility took affirmative steps to address plaintiff's shower situation—promptly transferred plaintiff to a cell with a private shower and provided him with a chair for showering. The record further supports that plaintiff used the shower without incident for over a year prior to his fall and trip to the emergency room. Accordingly, in the circumstances of this case, the fact that the Detention Facility did not house plaintiff in a cell or unit equipped specifically for handicapped inmates cannot establish an Eighth Amendment violation.

### 2. Alleged Denial of Opportunity to Shower Upon Return from Emergency Room

Next, plaintiff's amended complaint alleges that he was denied the opportunity to shower except for "one time in seven days" following his return to the Detention Facility from the emergency room [Doc. 49 ¶ 24]. Plaintiff now claims he was denied the opportunity to shower for eleven days straight, after defendants cited case law holding that one shower per week is constitutionally permissible [*See* Doc. 73 p. 12 n.11 (defendants' memorandum) (noting that the Sixth Circuit "has concluded that deprivation of a shower and other personal hygiene items for a brief span of time . . . i.e., only six days is not actionable conduct" under the Eighth Amendment) (quoting *Richmond*, 450 F.

14

App'x 455 (citation omitted)); Doc. 78 p. 7, 11 (plaintiff's response brief) (noting the case law in defendants' memorandum and stating that eleven days without a shower is four days over the constitutional minimum of one shower per week)].

Defendants argue that, on each of the seven days, plaintiff forfeited his opportunity to shower by choosing not to shower in the period of time made available to him [Doc. 73 p. 12]. Arguing that he did not "refuse" the opportunity, plaintiff claims that every night he said he needed to be taken to a different housing unit to use a handicap shower but that his requests were denied [Doc. 78 p. 7]. But as defendants point out, not even plaintiff's handwritten daily log references being denied the opportunity to shower between November 20, 2011, and November 27, 2011.

Having reviewed the record, the Court concludes there is insufficient evidence to create a genuine dispute that defendant was denied an opportunity to shower for a period of time such that either the objective or subjective component of the Eighth Amendment analysis could be established.[6]

## C.    Supervisory Liability

Even assuming plaintiff provided sufficient evidence of a constitutional violation, liability cannot attach to defendants White or Johnson during the relevant time period.

---

[6] Plaintiff's claims involving his medical care and conditions of confinement have been analyzed under the Eighth Amendment because that amendment is the primary source of protection to a prison inmate making such allegations. *See Estelle*, 429 U.S. at 104. To the extent plaintiff alleges violations of his Fourteenth Amendment rights because of his classification at the Detention Facility, such claims also fail as a matter of law. "[P]rison inmates have no constitutional right to placement in any particular prison or to placement in any particular section within the prison." *Meeks v. Schofield*, 10 F. Supp. 3d 774, 797 (M.D. Tenn. 2014).

15

Any claim against these defendants predicated on the actions of their subordinates must be analyzed under § 1983 supervisory liability principles.

To establish supervisory liability, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *see also Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (stating that plaintiff must show "active unconstitutional behavior" by the supervisor).

Specifically, the amended complaint alleges that defendant White is responsible for plaintiff's alleged injuries "under the theory of 'respondeat superior,' and for his failure to properly train, monitor, or otherwise make rules or policies that would protect the plaintiff in this emergency/serious medical needs and disabilities [sic]" [Doc. 49 p. 32]. In his response brief, plaintiff argues that the sheriff is responsible for acts of the jailer and for establishing a system to monitor compliance with policies and procedures through regular reviews and inspections [Doc. 78 p. 2; Doc. 79-1 p. 56]. But in light of the legal standard and the available evidence, notably the lack of direct or indirect involvement of defendants White or Johnson in plaintiff's situation, plaintiff has not created a genuine dispute that either defendant is liable under a theory of supervisory liability.

16

### D. Municipal Liability

An official-capacity suit is treated as a suit against the entity of which the official is an agent. *See Petty v. Cnty. of Franklin*, 478 F.3d 341, 348–49 (6th Cir. 2007) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.")). Therefore, plaintiff's claims against defendants White and Johnson in their official capacities are properly analyzed as claims against Anderson County. A local government entity "may only be held liable under § 1983 where 'its policy or custom causes the constitutional violation in question.'" *Garner v. City of Memphis*, 576 F. App'x 460, 462 (6th Cir. 2014) (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005)); *see also City of Canton v. Harris*, 489 U.S. 378, 385, 389 (1989) (affirming that a municipality "can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue" in that its policies or customs are the moving force behind the constitutional violation).

In his response brief and supplemental brief, plaintiff recites several Detention Facility policies and argues that those policies were not followed with respect to his incarceration. For example, Detention Facility Policy and Procedure 4.03 provides that "[i]nmates who display special needs during the intake booking process will be diverted to special housing when such housing space is available"; "[a] classification reassessment will be conducted on an as needed basis established for each inmate based on behavior, needs and other classification issues"; and "inmates with . . . handicaps . . . will be placed

17

in separate housing and observed accordingly until an official has deemed them well or capable of returning to their regular housing unit" [Doc. 79-1 p. 57–59]. And the Detention Facility's ADA policy, Policy 13.05, states that "[a]n arrestee with mobility disability must have access to the toilet facilities, showers, and other amenities at the jail" and that the facility "will observe proper classification procedures that will identify any person who will require special consideration to a disability under ADA guidelines" [*Id.* at 64–65].

Here, aside from plaintiff's assertions to the contrary, there is no evidence to support that plaintiff informed the facility that he was handicapped at his initial booking. When plaintiff eventually requested a handicap-equipped cell, the facility moved plaintiff to a cell with a private shower and gave him a chair for showering, where he lived for more than a year without reported incident. Then after plaintiff's fall and at his request, on December 2, 2011, plaintiff was escorted to the handicap-equipped shower in the minimum security housing unit [Doc. 72-1 ¶ 13].

It is by no means clear that the Detention Facility's policies were violated. And notwithstanding any violation, the Court finds the record does not create a genuine dispute that Anderson County had a policy or custom that was the moving force behind any of the alleged injuries or constitutional violations.[7]

---

[7] As the Court previously found in dismissing the claims against Dr. Townsend in his official capacity, "[t]here is nothing in the record to suggest that the alleged violation of plaintiff's civil rights was the result of any custom or policy on the part of Anderson County, Tennessee" [Doc. 55 p. 8].

18

In sum, with regards to plaintiff's constitutional claims, the Court will grant summary judgment in favor of defendants White, Johnson, and Anderson County, Tennessee.[8]

### E.    Americans with Disabilities Act

Under Title II of the Americans with Disabilities Act, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "[T]he plaintiff must show that the discrimination was *intentionally* directed toward him or her in particular." *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008) (emphasis in original).

Plaintiff has not done so here, let alone present evidence of any causal connection between his alleged disability and his shower situation. *See Moore v. Curtis*, 68 F. App'x 561, 563 (6th Cir. 2003) ("Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment."). In support of his ADA claim, plaintiff argues that his physical impairments, including his obesity, degenerative disc disease, and need for crutches, substantially limit him in the major life activities of walking and performing manual tasks [Doc. 78 p. 2, 10, 12; Doc. 79-1 p. 64]. He further

---

[8] Even if plaintiff could present sufficient evidence of a constitutional violation, the Court finds that plaintiff has not shown that either defendant White or Johnson is not entitled to qualified immunity. There is insufficient evidence to indicate that the actions of either official were "'objectively unreasonable in light of [plaintiff's] clearly established constitutional rights.'" *Mallory v. City of Riverside*, 35 F. Supp. 3d 910, 923 (S.D. Ohio 2014) (quoting *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005)).

19

argues that Sheriff White saw plaintiff's crutches in his cell and knew plaintiff could not walk without crutches, and therefore knew that plaintiff did not have a handicap shower [*Id.*]. Plaintiff also questions why, after he returned from the emergency room and was in a wheelchair and allegedly could not walk, he was housed in a unit without a handicap shower [*Id.* at 12]. These arguments, however, are insufficient to create a genuine dispute that plaintiff was not originally given handicap shower access or was later denied a handicap shower because of his alleged disability. *See Tucker*, 539 F.3d at 532–33 (looking to whether appellant was intentionally subjected to discrimination solely because of his disability).

Plaintiff's ADA claim is also based on his allegations that he was denied medical care during his incarceration. But courts have determined that "claims based solely on the provision of *inadequate* or *negligent* medical care are not cognizable under the ADA." *Centaur v. Haslam*, No. 3:14-cv-00472, 2014 WL 940513, at *3 (M.D. Tenn. Mar. 11, 2014) (emphasis in original) (collecting cases). And to the extent plaintiff's claim rests on his contention that the county failed to adequately train and monitor its employees to prevent ADA violations, the Court notes that "[f]ailure to supervise is not a viable theory for recovery of compensatory damages in a Title II ADA claim, since such failure is necessarily not directed at a particular disabled individual." *Sears v. Bradley Cnty. Gov't*, 821 F. Supp. 2d 987, 990–91 (E.D. Tenn. 2011).

**IV.     Conclusion**

For the reasons above, the Court will **GRANT** defendants' motion for summary judgment [Doc. 72] and **DISMISS** this action.  The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE